# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

SE PROPERTY HOLDINGS, LLC,  :

    Plaintiff,  :

vs.  :     CA 18-0050-KD-MU

TAMMY T. CENTER, etc., et al.,  :

    Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. GenLR 72(a)(2)(S), on the Defendants' motion to dismiss (Doc. 7), Plaintiff's response in opposition (Doc. 10), the Defendants' reply (Doc. 11), and the oral arguments of counsel for the parties on April 26, 2018 (*compare* Doc. 12 *with* Doc. 14). Based on the contents of these pleadings, along with the arguments of counsel, the Magistrate Judge **RECOMMENDS** that the Defendants' motion to dismiss (Doc. 7) be **DENIED**.

## PROCEDURAL BACKGROUND

To understand the genesis of the Defendants' motion to dismiss the instant fraudulent transfer action (*see* Doc. 7), it is necessary to understand some of the history relative to a prior fraudulent transfer action filed by SE Property Holdings, LLC (hereinafter, "SEPH") against some of these same Defendants in this Court on January 15, 2015 in *SE Property Holdings, LLC v. Tammy T. Center, et al.,* CA 15-0033-WS-C

(hereinafter, "Prior Action").[1] In the First Amended Complaint in the Prior Action, SEPH asserted claims against the Defendants[2] for actual fraudulent transfer under Alabama Code § 8-9A-4(a) (Count One), constructive fraudulent transfer under Alabama Code § 8-9A-4(c) (Count Two), constructive fraudulent transfer under Alabama Code § 8-9A-

---

[1] This Prior Action was filed six years into the lifespan of the *Bama Bayou* Action, which actually consists of two collection lawsuits filed in the Circuit Court of Mobile County, Alabama by Vision Bank on January 16, 2009, relating to "Bama Bayou" loans and a "Marine Park" loan, loans in which Charles and Belinda Trammell were borrowers and guarantors (along with many other individuals). *See SEPH v. Center,* CA 15-0033-WS-C, Doc. 180, at 7. "The *Bama Bayou* Action remains pending today in Mobile County Circuit Court, with SEPH being the named plaintiff as the successor by merger of Vision Bank." *Id.* at 8.

[2] Initially, the named Defendants in the Prior Action were: Tammy T. Center, in her capacity as Personal Representative of the Estate of Charles H. Trammell; Belinda R. Trammell; Amy T. Brown; Tammy T. Center, in her individual capacity; Trammell Family Orange Beach Properties, LLC; Trammell Family Lake Martin Properties, L.L.C.; and A, B, C, D, E, F, and G. *See SEPH v. Center,* CA 15-0033-WS-C, Doc. 1, at 1. In the Rule 16(b) Scheduling Order, entered on October 20, 2015, fictitious parties A, B, C, D, E, F, and G (described in the initial Complaint as "the persons or entities that received property, securities, cash, and/or other proceeds that were fraudulently transferred by Mr. Trammell, and/or Belinda, either directly from Mr. Trammell and/or Belinda, and/or from Mr. Trammell's and/or Belinda's transferee(s), or who otherwise conspired or participated in any such fraudulent transfers, but whose identities are not yet known." Doc. 1, at 2-3) were **stricken**, with notation being made that the case would "proceed against the named defendants only." *Id.,* Doc. 35, at 2.

In addition, in the same Scheduling Order, the Magistrate Judge determined that "expanding discovery to include '[a]ny [of the 33] affirmative defenses pleaded by the Defendants' . . . would likely burden the parties and add significantly to the expense of discovery without providing a substantial benefit[,]" and would thereby "violate the proportionality rule, Fed.R.Civ.P 26(b)(2)(C)(iii)." *Id.* at 4-5. Therefore, the parties were ordered to submit a joint supplementation explaining their discovery needs with more clarity, *id.,* and following consideration of the joint supplementation, *see id.* Doc. 38, as amended, *id.* at Doc. 42, the Rule 16 Scheduling Order was amended to reflect that discovery would be had only with respect to the eleven specific subjects set out by Order, those subjects including "Charles Trammell and Belinda Trammell's transfers of real property and other property, including UPS stock, to [the named] limited liability companies and/or to other [named] Defendants[.]" *Id.,* Doc. 43, at 1 (magistrate judge's order of November 25, 2015).

The Defendants in the First Amended Complaint, filed April 11, 2016, were: Tammy T. Center, in her capacity as Personal Representative of the Estate of Charles H. Trammell; Belinda R. Trammell; Amy T. Brown; Tammy T. Center, in her individual capacity; Trammell Family Orange Beach Properties, LLC; and Trammell Family Lake Martin Properties, L.L.C. *See id.,* Doc. 55, at 1.

5(a) (Count Three), and conspiracy (Count Four). *See id.,* Doc. 55. The transfers alleged to have been fraudulent were the following: (1) the transfer by the Trammells to Defendant Trammell Family Orange Beach Properties, LLC ("Orange Beach LLC") of a Baldwin County condominium unit on January 26, 2011; (2) the transfer by the Trammells to Defendant Trammell Family Lake Martin Properties, LLC ("Lake Martin LLC") of a Lake Martin house on January 26, 2011; (3) the transfer by the Trammells of 90% ownership/membership interest in the Orange Beach LLC and the Lake Martin LLC to Defendants Tammy T. Center and Amy T. Brown in December of 2011; (4) the transfer by Charles Trammell of UPS stock to Center, Brown, the Orange Beach LLC and/or the Lake Martin LLC in April of 2012;[3] and (5) the October 2013 transfer by Charles Trammell or his Estate of additional UPS stock and his principal residence to Belinda Trammell, reducing the Estate's value below $200,000. *Id.* at ¶¶ 17-24.

A non-jury trial was held in the Prior Action on May 8-10, 2017, after which an Order was entered on August 8, 2017. *See id.,* Doc. 180. In relevant measure, the Court granted the equitable remedy of an injunction, specifically enjoining the named Defendants "from further disposition of any of the following assets: the Perdido Place Condo, the Lake House, a 45% membership interest held by each of Center and Brown in each of Trammell Family Orange Beach Properties, LLC and Trammell Family Lake Martin Properties, LLC, the shares of UPS stock transferred into those LLCs in April 2012, and the shares of UPS stock transferred to Belinda Trammell in October 2013.

---

[3] Following the bench trial in the Prior Action in May of 2017, this Court determined that the UPS stock transferred by Charles Trammell in April of 2012 was fraudulently transferred to the LLCs. *Compare* Doc. 180, at 58 & 64 (finding that the shares of UPS stock were transferred into the LLCs in April of 2012) *with* 206, at 1 (final judgment enjoining the defendants from disposing of the shares of stock transferred into the LLCs in April of 2012).

This injunction will remain in effect until such time as a final judgment has been entered in the *Bama Bayou* Action, and is intended to preserve the *status quo* dating back to when the fraudulent transfers occurred, in terms of available assets to satisfy any judgment that may be entered in SEPH's favor against Belinda Trammell and/or the Estate of Charles Trammell in the state-court proceedings." *Id.* at 58. The Court went on to note the following:

> [T]he Court remains concerned that the remedy of an injunction may be insufficient to protect SEPH's interests fully. Here is why: There was testimony at trial that the transferee defendants have already wasted or otherwise dissipated many tens of thousands of dollars['] worth of the fraudulently transferred UPS stock shares. It is unclear at this time precisely how much has been spent, whether those funds have been used to purchase any other assets that might be subject to execution if SEPH prevails in the *Bama Bayou* Action, or how large the deficiency might be (*i.e.,* the gap between (i) the valuation of those fraudulently transferred assets at the time of the transfer and (ii) the valuation of those remaining assets today). Moreover, while this Court has repeatedly stated that it is not trying the *Bama Bayou* Action, the undersigned has made specific findings of very serious, fraudulent conduct by defendants attempting to place assets beyond SEPH's reach. In the Court's view, the final remedies ordered in this case must take into account the seriousness of defendants' misconduct, must safeguard the bank's interest in full should it prevail in *Bama Bayou*, and must ensure that defendants do not profit from their fraudulent conduct by pocketing any appreciated value in the fraudulently transferred assets in the interim.
>
> The AUFTA confers upon this Court broad authority to fashion equitable remedies, including the possibility for injunctive relief as to "other property," "[a]ppointment of a receiver to take charge of the asset transferred or of other property of the transferee," or "[a]ny other relief the circumstances may require." Ala.Code § 8-9A-7(a)(3). The Court has every intention of exercising this broad equitable authority under the statute to take all necessary and appropriate steps to ensure the foregoing objectives are met.
>
> As a starting point, the Court **orders** that an accounting be performed to quantify exactly how much the transferee defendants have dissipated or wasted [of] the fraudulently transferred assets (and particularly the UPS stock shares), where those dissipated assets went, what the shortfall is between the fair value of those assets at the time of

4

the fraudulent transfer and their valuation today as a result of such
dissipation/waste, and whether defendant transferees have other property
whose disposition might be enjoined to cover the deficiency and protect
SEPH's interests in the event it prevails in the *Bama Bayou* Action. To that
end, SEPH is **ordered** to retain a CPA or other reasonably qualified
individual to perform the accounting, and defendants are **ordered** to
cooperate fully and promptly with all reasonable requests for information
and records needed by such CPA or otherwise qualified individual to
complete the accounting.

*Id.* at 62-63 (footnote omitted); *compare id. with* Doc. 197, at 4 (clarifying the August 8, 2017 order, on November 13, 2017, in ordering "that defendants are **enjoined** from expenditure of cash dividends generated by the remaining UPS stock shares transferred into the defendant LLCs in April 2012, except that such dividends may be used to pay fixed costs directly relating to the preservation and maintenance of the real property (*i.e.,* utility bills, association dues, property taxes, insurance, termite bonds).").

Finally, and most important for purposes of the motion to dismiss in this case, on January 2, 2018, the Court in the Prior Action entered its final order on Plaintiff's Accounting and Motion for Additional Discovery, *id.* at Doc. 205, and that same date its Final Judgment in accordance with the Orders entered on August 8, 2017 (Doc. 180), November 13, 2017 (Doc. 197), and on January 2, 2018 (Doc. 205), *id.* at Doc. 206.[4] The January 2, 2018 Order reads, in relevant measure, as follows:

---

[4] The Final Judgment in the Prior Action reads, in relevant measure, as follows:

[I]t is **ordered, adjudged and decreed** that all defendants are liable to plaintiff on Counts I, II, and III for violations of the Alabama Uniform Fraudulent Transfer Act.

It is further **ordered, adjudged and decreed** that defendants are **enjoined** from further disposition of any of the following assets: the condominium unit known as Unit 501, Perdido Place, Orange Beach, Alabama; the Trammells' Trillium lake house located on Longpine Drive; a 45% membership interest held by each of defendants Tammy Center and Amy Brown in each of Trammell Family Orange Beach Properties, LLC and Trammell Family Lake Martin

(Continued)

[From August 2017 through November 2017], SEPH's accountant, Stacy Cummings, analyzed extensive financial documentation and information supplied by defendants for the purpose of ascertaining the disposition of the fraudulently transferred UPS stock and the present whereabouts of any proceeds. Based on Cummings' accounting, SEPH requests the following additional relief: (i) that the August 8 Order's injunction be expanded to cover the real property at 9513 Gunnison Drive and 333 Oak Ridge Drive; and (ii) that additional discovery (including depositions of the transferee defendants) be authorized to facilitate a comprehensive determination of where the UPS stock value has gone.

. . .

SEPH's accounting establishes that the transferee defendants[5] have dissipated roughly $2 million in value from UPS stock shares fraudulently transferred to them by Charles Trammell in 2012 and 2013, with almost nothing to show for it in terms of assets on which SEPH may execute. Again, the intent of the injunctive relief prescribed in the August 8 Order was to preserve the *status quo* to the greatest extent possible, to prevent defendants from profiting from the very serious fraudulent conduct documented therein, and to safeguard SEPH's interests in having assets available to collect on any judgment it might receive against the Trammells in the *Bama Bayou* Action. Those objectives have been frustrated by the revelation that the transferee defendants have somehow frittered away more than three-quarters of the UPS shares that were fraudulently

---

Properties, LLC; the shares of UPS stock transferred into those LLCs in April of 2012 (inclusive of the cash dividends generated by same, except that defendants may use such dividends to pay fixed costs directly relating to the preservation and maintenance of the real property . . .); the shares of UPS stock transferred to Belinda Trammell in October 2013; and defendants' interests in that certain real property located at 9513 Gunnison Drive, Pike Road, Alabama, and 333 Oak Ridge Drive, Pike Road, Alabama. This injunction will remain in effect until such time as a final judgment has been entered in the underlying *Bama Bayou* litigation pending in Mobile County Circuit Court.

It is further **ordered, adjudged and decreed** that defendants Belinda Trammell and Estate of Charles Trammell are liable to plaintiff on Count IV for civil conspiracy, but that plaintiff shall recover nothing on such claim for failure to prove damages by a preponderance of the evidence.

*SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 206, at 1-2.

[5] Those transferee defendants were identified as the Lake Martin LLC, the Orange Beach LLC, and Belinda Trammell. *SEPH v. Center, et al.,* CA 15-0033-WS, Doc. 205, at 5.

transferred to them in 2012 and 2013. Under the circumstances, the Court readily agrees with SEPH that expansion of the remedies ordered in the August 8 Order is warranted and appropriate in the interests of justice and under applicable principles of equity. Accordingly, the injunction set forth in the August 8 Order is hereby **expanded** to cover the real property identified in the transferee defendants' interrogatory responses. To that end, defendants are **enjoined** from further disposition of their interests in the real property located at 9513 Gunnison Drive and 333 Oak Ridge Drive, until such time as a final judgment has been entered in the *Bama Bayou* Action.

As part of its accounting submission, SEPH moves for an enlargement of discovery into the ultimate disposition of the proceeds of the UPS stock. In support of that request, SEPH hypothesizes that those proceeds were "fraudulently transferred to other family members" and that "instead of preserving the fraudulently transferred assets . . ., they 'doubled down' by moving assets out of the names of the transferees." (Doc. 198, at 6; doc. 202, at 10.) For that reason, "SEPH requests permission to take a deposition of Brown, Center, and Belinda Trammell" to investigate "potential subsequent fraudulent transfers." (Doc. 198, at 6; doc. 202, at 10.) The Motion for Additional Discovery (doc. 198) is **denied.** SEPH has had the benefit of several months for its accountant to wade through the transferee defendants' financial records to determine what became of the fraudulently transferred assets. ***The Court is not inclined to allow the subject of remedies to blossom into <u>a separate, full-blown litigation</u> any more than it already has. More to the point, suppose SEPH is correct that the transferee defendants fraudulently transferred the proceeds of the UPS stock to other family members. Those family members are not parties to this litigation and have not had an opportunity to be heard or to defend their interests; therefore, it does not appear that they would or could be bound by any injunction this Court might enter. Furthermore, the Court would have to examine each of those transfers to determine whether they bear the badges of fraud or otherwise fall within the parameters of the AUFTA, <u>which is tantamount to an entirely separate liability proceeding. In short, SEPH's request for further discovery would take this matter too far afield from the specific claims and parties joined in this dispute, would require additional parties to be joined and additional liability findings to be made, and would prolong and proliferate these proceedings (which went to trial in May 2017) exponentially</u>.***

*SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 205, at 3 & 6-8 (footnote omitted; significant emphasis supplied).

7

Against this backdrop, SEPH commenced the instant fraudulent transfer action in this Court on February 2, 2018, against the Defendants[6] under Alabama Code §§ 8-9A-4(a), 8-9A-4(c), and 8-9A-5(a). (Doc. 1). The transfers alleged to have been fraudulent in this case are transfers of the proceeds (sales proceeds and dividends) of UPS stock made subsequent to the fraudulent transfers of UPS stock shares in April 2012 and October 2013 to the Orange Beach and Lake Martin LLCs and Belinda Trammell and which were the subject of the Prior Action, as well as transfers of funds received through margin loans secured by the UPS stock found to have been fraudulently transferred to the aforementioned LLCs in the Prior Action. (*See id.* at ¶ 25)[7]. SEPH avers that the recipients of these subsequent transfers were Tammy Center, Amy Brown, Carlton Center, Patrick Lance Brown, Sr., Tammy Center as guardian and custodian for Chase Trammell Center, Tammy Center as guardian of and custodian for NHC, Amy Brown as guardian of and custodian for Patrick Lance Brown, Jr., Amy Brown as guardian of and custodian for SSB, and Amy Brown as guardian of and custodian for LTB. (*Id.* at ¶ 26; *see also* ¶¶ 27-37 (listing the amounts of subsequent transfers and the recipients of those subsequent transfers)).

---

[6] The named Defendants in the instant action include all of the named defendants in the Prior Action (*compare* Doc. 1 *with SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 55, at 1), along with the following Defendants: Tammy T. Center, as guardian of and custodian for Chase Trammell Center; Chase Trammell Center; Tammy T. Center, as guardian of and custodian for NHC; Amy T. Brown, as guardian of and custodian for Patrick Lance Brown, Jr.; Patrick Lance Brown, Jr.; Amy T. Brown, as guardian of and custodian for SSB; Amy T. Brown, as guardian of and custodian for LTB; Carlton Center; and Patrick Lance Brown, Sr. (*Id.*)

[7] The complaint in this case identifies the "transferors" as Belinda Trammell, the Lake Martin LLC, the Orange Beach LLC, Amy Brown and Tammy Center. (Doc. 1, at ¶¶ 18 & 19.)

The Defendants filed a Rule 12(b)(6) motion to dismiss this action on March 16, 2018, therein averring that the present federal action is barred by the doctrines of collateral estoppel and res judicata. (Doc. 7, at 2-4; *see also* Doc. 11, at 2.)

## **CONCLUSIONS OF LAW**

*A.* **Pleading Standard.** The sufficiency of Plaintiff's claim to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Post *Twombly,* it is clear that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id*. at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.,* 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."), *cert. denied,* ___ U.S. ___, 137 S.Ct. 2292, 198 L.Ed.2d 724 (2017); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.,* 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

In this case, the Defendants contend they are entitled to a Rule 12(b)(6) dismissal of SEPH's complaint based on the doctrines of collateral estoppel and *res judicata*. (*See* Doc. 7, at 2-4.) Before becoming immersed in the elements of these two doctrines, the undersigned briefly recognizes that counsel for the parties, during oral

argument, agreed that state law rules of collateral estoppel and *res judicata* govern this Court's analysis. The undersigned would simply note that in light of the holdings in *Semtek Int'l Inc. v. Lockheed Martin Corp.,* 531 U.S. 497, 508, 121 S.Ct. 1021, 1028, 149 L.Ed.2d 32 (2001) ("In short, federal common law governs the claim-preclusive [that is, *res judicata*] effect of a dismissal by a federal court sitting in diversity. . . . It is left to us, then, to determine the appropriate federal rule[] . . . [and] we think the result decreed by *Dupasseur* continues to be correct for diversity cases. Since state, rather than federal, substantive law is at issue there is no need for a uniform federal rule. And indeed, nationwide uniformity in the substance of the matter is better served by having the same claim-preclusive rule (***the state rule***) apply whether the dismissal has been ordered by a state or a federal court. That is, it seems to us, a classic case for adopting, ***as the federally prescribed rule of decision, the law that would be applied by state courts in the State in which the federal diversity court sits.***" (emphasis supplied; citations omitted)) and *CSX Transp., Inc. v. General Mills, Inc.,* 846 F.3d 1333, 1335 (11th Cir. 2017) ("[F]ederal common law adopts the state rule of collateral estoppel to determine the preclusive effect of a judgment of a federal court that exercised diversity jurisdiction."), it is clear that federal common law borrows the state rules of collateral estoppel and *res judicata* to determine the preclusive effect of an earlier federal judgment where the court exercised diversity jurisdiction, *compare id.* at 1340 *with Semtek Int'l Inc., supra,* 531 U.S. at 508, 121 S.Ct. at 1028, as is the case here, *see SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 1, at ¶ 9 & Doc. 55, at ¶ 8 (asserting diversity jurisdiction).

11

**B. <u>Alabama Law of Collateral Estoppel and Analysis</u>.** "The elements of collateral estoppel are: (1) an issue identical to the one litigated in the prior suit; (2) that the issue was actually litigated in the prior suit; (3) that resolution of the issue was necessary to the prior judgment; and (4) the same parties." *Dairyland Ins. Co. v. Jackson,* 566 So.2d 723, 726 (Ala. 1990) (citations omitted).

> "Only issues *actually decided* in a former action are subject to collateral estoppel." *Leverette ex rel. Gilmore v. Leverette,* 479 So.2d 1229, 1237 (Ala. 1985) (emphasis added). The burden is on the party asserting collateral estoppel to prove that the issue it is seeking to bar was determined in the prior adjudication.

*Lee L. Saad Constr. Co., Inc. v. DPF Architects, P.C.,* 851 So.2d 507, 520 (Ala. 2002) (citations omitted); *see also Dunavant, infra,* 603 Fed.Appx. at 741 ("[Under Alabama law], collateral estoppel precludes only the re-litigation of issues that already have been adjudicated in a previous action[]. To show that the same issue has already been adjudicated, collateral estoppel requires that the issue has been 'actually litigated,' 'necessary to the prior judgment,' and 'identical to the issue litigated in the present action.'").

The Defendants do not perform an individual analysis of the four elements of collateral estoppel set forth above in their written submissions (*see* Docs. 7 & 11). Because the Defendants bear the burden of showing that they are entitled to dismissal of the present fraudulent transfer action on collateral estoppel grounds and have not set forth the legal framework under Alabama law and did not structure their arguments in light of the proper legal framework, their motion to dismiss is due to be denied.

The undersigned also recommends that the Court find that the Defendants have not demonstrated that the issue they seek to bar in the present case was decided in the

Prior Action. Indeed, the issue in this case, directed to subsequent purportedly fraudulent transfers of proceeds (sales proceeds and dividends) of the UPS stock and funds received through margin loans secured by the UPS stock (that is, transfers after the April 2012 and October 2013 fraudulent transfers of UPS stock to Belinda Trammell, the Orange Beach LLC, and the Lake Martin LLC, as determined in the Prior Action), was not actually litigated in the Prior Action, was not necessary to the judgment in the Prior Action, and certainly was not identical to any of the issues in the Prior Action. The actual transfers are different in that they occurred at different times, were in different forms (that is, the property transferred was different), and, at the very least, involved different transferees. The fraudulent transfers of UPS stock to Belinda Trammell, the Orange Beach LLC, and the Lake Martin LLC, as determined in the Prior Action, occurred in April of 2012 and October of 2013, whereas the purported fraudulent transfers in this action occurred after those dates and consist of transfers of proceeds (sales proceeds and dividends) of the UPS stock and funds received through margin loans secured by the UPS stock to Tammy Center, Amy Brown and their respective husbands and children. In addition, SEPH did not learn of these transfers until after the accounting that was ordered and undertaken following the bench trial in the Prior Action. The trial judge in the Prior Action recognized those critical differences and wrote:

> ***The Court is not inclined to allow the subject of remedies to blossom into <u>a separate, full-blown litigation</u> any more than it already has. More to the point, suppose SEPH is correct that the transferee defendants fraudulently transferred the proceeds of the UPS stock to other family members. Those family members are not parties to this litigation and have not had an opportunity to be heard or to defend their interests; therefore, it does not appear that they would or could be bound by any injunction this Court might enter. Furthermore, the Court would have to examine each of those transfers to determine whether they bear the badges of fraud or otherwise fall within the***

> ***parameters of the AUFTA, <u>which is tantamount to an entirely separate liability proceeding. In short, SEPH's request for further discovery would take this matter too far afield from the specific claims and parties joined in this dispute, would require additional parties to be joined and additional liability findings to be made, and would prolong and proliferate these proceedings (which went to trial in May 2017) exponentially</u>.***

*SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 205, at 8 (emphasis supplied). This language certainly indicates that the Court in the Prior Action regarded proceeds of the UPS stock as different from the stock itself and, more importantly, that any transfers of proceeds of the stock would be subject to a separate judicial determination regarding whether "they bear the badges of fraud or otherwise fall within the parameters of the AUFTA[.]" *Id.* In light of this language from the final order in the Prior Action, this Court should **DECLINE** to find that the issue in this case was actually litigated in the Prior Action, was necessary to the judgment in the Prior Action, and is identical to and issue in the Prior Action.

The Defendants' primary argument in support of their motion to dismiss appears to be that SEPH could have and should have discovered and litigated the subsequent transfers during the course of the Prior Action. This argument does not carry Defendants' burden of establishing the propriety of dismissal of the instant complaint on collateral estoppel grounds but, instead, raises questions of fact which cannot be answered at this juncture. The undersigned acknowledges that the initial complaint in the Prior Action does contain some fictitious party language, *see SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 1, at 2-3; however, the assigned Magistrate Judge in that case (as a procedural matter) struck the fictitious defendants (and allegations), given that fictitious-party pleading is not permitted in federal court, and specifically allowed the

14

case to proceed only with respect to the named defendants, *id.,* Doc. 35, at 1-2. In addition, the assigned Magistrate Judge in the Prior Action specifically found the issues for discovery set forth in the parties' Rule 26(f) report to be much too broad (with respect to the Defendants' 33 affirmative defenses) and not in accord with the proportionality rule set forth in the Federal Rules of Civil Procedure, Fed.R.Civ.P. 26(b)(2)(C)(iii). That Magistrate Judge ordered the parties to supplement their report and, once supplemented, entered an order on November 25, 2015, setting forth all the issues specifically subject to discovery, *id.,* Doc. 43, at 1-2, which included "Charles Trammell and Belinda Trammell's transfers of real property and other property, including UPS *stock*, to [the named] limited liability companies and/or to other [named] Defendants[.]" *Id.* at 1 (emphasis supplied). Thus, this Court is certainly in no position to find on motion to dismiss that SEPH could have and should have discovered the identities of the fictitious defendants and the transfers referenced in this action during discovery in the Prior Action in order to add those defendants and transfers by amendment to the Prior Action before March 8, 2016, *see SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 35, at ¶ 5 (requiring motions to amend the pleadings or to join other parties to be filed not later than March 8, 2016), particularly when the Defendants offer no evidence that discovery related to those identities and the transfers alleged presently would have been allowed in the Prior Action.

      **C.**     **Alabama Law of *Res Judicata* and Analysis.** "Two causes of action are the same for res judicata purposes when the following four elements are satisfied: '(1) a prior judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) with substantial identity of the parties, and (4) with the same cause of action presented in

both actions.'" *Chapman Nursing Home, Inc. v. McDonald,* 985 So.2d 914, 919 (Ala. 2007), quoting *Equity Residential Management, Inc. v. Vinson,* 723 So.2d 634, 636 (Ala. 1998). "'If those four elements are present, then any claim that was, or that could have been, adjudicated in the prior action is barred from further litigation.'" *Id.* (citations omitted).

SEPH concedes that the first two elements are satisfied (*see* Doc. 10, at 11-16) and, instead, contends that the Defendants have not established and cannot establish the third and fourth elements. (S*ee id.*). As for the third element of substantial identity of the parties, the Eleventh Circuit in *Dunavant v. Sirote & Permutt, P.C.,* 603 Fed.Appx. 737 (11th Cir. Feb. 9, 2015), set forth relevant Alabama law, as follows:

> Alabama's res judicata doctrine requires that the "parties be identical, sometimes referred to as the mutuality of estoppel requirement." *Stewart v. Brinley,* 902 So.2d 1, 10 (Ala. 2004) (citation omitted). "An exception is made to this requirement for parties in privity with a party to the prior action." *Id.* (citation omitted). Thus, "[a] person may be bound by a judgment even though not a party to a suit if one of the parties to the suit is so closely aligned with his interests as to be his virtual representative." *Gonzalez, LLC v. DiVincenti,* 844 So.2d 1196, 1203 (Ala. 2002) (citation omitted). Or, said another way, the old and new parties must "share th[e] same interest in the subject matter of the dispute." *Greene v. Jefferson Cnty. Comm'n,* 13 So.3d 901, 912 (Ala. 2008). For instance, in *Gonzalez,* the Alabama Supreme Court held that although the new defendants were not named in the original action, "they were . . . contractors hired by the [defendants] named in that [first] action." 844 So.2d ay 1203. Because the original defendants "had to defend the inspection work of their contractor, and [because] the interests of [the contractors] were adequately represented in the original case," the defendants in the two actions were substantially identical for purposes of res judicata. *Id.*

*Id.* at 740-41 & 741. In *Dunavant, supra,* the Eleventh Circuit found significant, in performing its analysis of the third element, that "'the plaintiffs do not allege that the past and present defendant engaged in different conduct; on the contrary, they allege that both are liable for the exact same conduct[.]'" *Id.* at 741 (citation omitted). Here, of

16

course, while some of the named defendants are identical to the named defendants in the Prior Action, many are not, and, just as important, SEPH does not claim that the Defendants in this case are liable for the same conduct as the Defendants in the Prior Action. SEPH prevails on this element. Defendants have not carried their burden of establishing that there is substantial identity of the parties in this action and the Prior Action.[8]

Defendants have also fallen short on the fourth element of *res judicata*, that is, the same-cause-of-action requirement:

> [U]nder Alabama law, "the principal test for comparing causes of action . . . is whether the primary right and duty or wrong are the same in each action." *Chapman Nursing Home, Inc. v. McDonald,* 985 So.2d 914, 921 (Ala. 2007) (emphasis omitted) (citation omitted). "Res judicata applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same nucleus of operative facts." *Id.* (emphasis omitted) (citation omitted). "As a result, two causes of action are the same for res judicata purposes when the same evidence is applicable to both actions." *Id.* (citation omitted). Said another way:
>
>> If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, *even if those claims are based on different legal theories or seek a different form of damages,* unless the evidence necessary to establish the elements of the alternative theories *varies materially* from the evidence necessary for a recovery in the first action.

*Dunavant,* 603 Fed.Appx. at 742-743 (citation omitted; emphasis in original).

Here, it is simply clear to the undersigned at this juncture in the proceedings that the wrongs alleged in this case are not the same as the fraudulent transfers proven in

---

[8] The Defendants at no time discuss the "privity" exception identified under Alabama law and to the extent they want to argue that SEPH had a duty to discover and add the defendants identified as "fictitious" in the Prior Action, such argument cannot carry the day on motion to dismiss for the reasons previously articulated.

the Prior Action and the same evidence is not applicable to both actions. The two lawsuits are based on separate and different acts. Indeed, the evidence applicable to the Prior Action dates to on or before April 2012 and October 2013 and was directed to the fraudulent transfer by Charles Trammell in April of 2012 of UPS stock to the Orange Beach LLC and the Lake Martin LLC and the October 2013 fraudulent transfer by Charles Trammell or his Estate of additional UPS stock to Belinda Trammell; however, here, the relevant evidence will direct itself to the purported fraudulent transfers of proceeds and dividends of the UPS stock (as well as the transfer of funds received through margin loans secured by the UPS stock) that occurred after the transfers of the UPS stock itself in April 2012 and October 2013.

When SEPH asked this Court in the Prior Action, months after the bench trial, to allow it discovery with respect to the subsequent transfers, this Court denied the request, noting that such discovery "would take th[e] matter too far afield from the specific claims and parties joined in this dispute, would require additional parties to be joined and additional liability findings to be made, and would prolong and proliferate these proceedings [] exponentially." *SEPH v. Center, et al.,* CA 15-0033-WS-C, Doc. 205, at 8. Therefore, given that "'for res judicata purposes, claims that could have been brought are claims in existence at the time the original complaint is filed or *claims actually asserted by supplemental pleadings or otherwise in the earlier action*[,]'" *Dunavant, supra,* 603 Fed.Appx. at 743 (emphasis in original), quoting *Manning v. City of Auburn,* 953 F.2d 1355, 1360 (11th Cir. 1992); *see In re Piper Aircraft Corp.,* 244 F.3d 1289, 1299 (11th Cir.) ("In this Circuit, [] res judicata does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim

were actually raised in that action."), *cert. denied sub nom. TDY Industries, Inc. v. Kaiser Aerospace Electronics Corp.,* 534 U.S. 827, 122 S.Ct. 66, 151 L.Ed.2d 33 (2001), and the Defendants have made no actual showing (in their motion or arguments) that the fraudulent transfers claim raised in the instant suit could have been brought in the original or amended complaint in the Prior Action, and the Court in the Prior Action would not allow SEPH discovery regarding these subsequent transfers, much less assert a claim regarding same, *see Ex parte Sears, Roebuck & Co.,* 895 So.2d 265, 270 (Ala. 2004) ("Where the court does the splitting [of claims] and dilatoriness on the part of the plaintiff is not a consideration, the plaintiff is not precluded from filing a later action."), the undersigned finds, again at this juncture in these proceedings, that SEPH's instant fraudulent transfer claim is not barred under the doctrine of *res judicata*.

## CONCLUSION

Based upon the foregoing, it is **RECOMMENDED** that the Defendants' motion to dismiss (Doc. 7) be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28

U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 8th day of May, 2018.

                          s/P. BRADLEY MURRAY
                          **UNITED STATES MAGISTRATE JUDGE**